**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 19-80030-CR-DIMITROULEAS**

**UNITED STATES OF AMERICA**

**v.**

**PHILLIP DREW "PJ" BRAUN**

# SENTENCING MEMORANDUM OF DEFENDANT BRAUN

Defendant Phillip Drew "PJ" Braun submits his Sentencing Memorandum in support of the imposition of a sentence of no more than the lower end of the Level 26 Guideline Range set out in Paragraph 143 of the Presentence Investigation Report (PSI) (DE637), consistent with the terms of the Plea Agreement (DE534). Further, Mr. Braun asks this Court to impose a sentence commensurate with that of codefendant Singerman who is equally situated insofar as concerns the offense conduct and role in the offense behavior.[1] Such a sentence of imprisonment is an allowable variance that would be "sufficient but not greater than necessary" to comply with the goals of sentencing set out in 18 U.S.C. § 3553(a)(2). Mr. Braun also asks

[1] Mr. Braun has been duly attentive to all conditions of his pretrial release.

this Court to recommend designation by the Bureau of Prisons (BOP) to a federal prison or a low security institution. He further asks this Court to recommend his participation in a Residential Drug and Alcohol Program (RDAP) while incarcerated if deemed eligible for participation by the BOP.

This requested sentence is consistent with the PSI, the defendant's background and role in the offense, and the terms of the Plea Agreement.

## I. CASE HISTORY

Phillip "PJ" Braun pled guilty on November 17, 2021 (DE532) to Counts 3 and 4 of the Indictment (DE1). Count 3 charged Introduction of unapproved new drugs into interstate commerce in violation of 21 U.S.C. §§ 331(d), 333(a)(2), and 355(a). Count 4 charged Conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(E)(i). As reflected in the Factual Proffer (DE535) and his Statement of Acceptance of Responsibility (PSI ¶129, DE637), Mr. Braun acknowledged and apologized for his criminal behavior in connection with the operation of Blackstone Labs, LLC.

## II. ADVISORY GUIDELINES CALCULATION

The Plea Agreement includes a joint recommendation that the applicable guidelines are a Level 26 considering all relevant sentencing guidelines factors (DE534).[2] The PSI summarizes that agreement and recommends the same guidelines computation (DE637, ¶143). With a criminal history category of I, the guidelines imprisonment range is 63 to 78 months (DE637, ¶195).

Mr. Braun asks this Court to sentence him to no more than the lower end of the Level 26 Guideline Range (63 months) and, in an exercise of discretion, determine that the low end of the guidelines over-represents the seriousness of the offense conduct. In fashioning the specific sentence, Mr. Braun asks the Court to consider a sentence commensurate with and no greater than that of codefendant Singerman, a codefendant whose involvement in the offense conduct is not materially different from Mr. Braun for sentencing purposes.

## III. NO OBJECTION TO PRE-SENTENCE INVESTIGATION REPORT

Mr. Braun does not object to the revised final PSI (DE637). He

[2] Mr. Braun recognizes, as does the Plea Agreement, that this Court is not bound by the terms of the plea agreement.

asks the Court to augment the Substance Abuse portions of the PSI (¶¶168-172) by recommending participation in the RDAP during the time of Mr. Braun's incarceration as consistent with the interests of justice and based on his substance abuse history. In addition to his struggles with alcohol and his self-medication during times of depression, Mr. Braun has struggled with the use of several body-building enhancers and supplements, all of which he is working earnestly to avoid. The substances include Tianeptine and Kratom, chemicals for which he had developed a dependency through the years. But with consistent effort during the time of this pending case, Mr. Braun has avoided these substances. Abstinence has not been easy.

Tianeptine when used by body builders has high abuse potential. In some states and countries, the chemical is classified as a controlled substance due to increasing incidents of misuse. The Centers for Disease Control and Prevention (CDC) has expressed concern that Tianeptine may be an "emerging public health risk," citing an increase in exposure-related calls to poison control centers in the United States. Cessation of Tianeptine use is difficult due to the possibility of withdrawal symptoms, with the severity of the

withdrawal dependent on the daily dose and the length of use. Withdrawal symptoms typically include agitation, nausea, vomiting, tachycardia, hypertension, diarrhea, tremor, and diaphoresis, some of which Mr. Braun experienced when he stopped its use while released on pretrial bond.

Under the circumstances, while Mr. Braun has been dedicated to living a chemical-free life, accomplishing that goal is difficult. Mr. Braun's health, wellness, and emotional wellbeing will benefit from participation in a rehabilitation program during the time of his incarceration.

## IV. SENTENCING CONSIDERATIONS

Consistent with the terms of the Plea Agreement and the PSI recommendation, Mr. Braun asks this Court to impose the least sentence allowable in consideration of the statutory sentencing factors. Among the § 3553(a) factors relevant in this case are the nature and circumstances of the offense, the history and characteristics of Mr. Braun, and the kinds of sentences available.

Mr. Braun is 40 years old with no meaningful criminal history. He has worked hard in the Sports Medicine industry, with a concentration on Strength and Conditioning. Mr. Braun has achieved

significant national and international success and acclaim as a bodybuilder, having competed internationally as a bodybuilder and winning the Arnold Classic, named after Arnold Schwarzenegger. Mr. Braun's strong presence in the bodybuilding field was instrumental in the development of the Blackstone Labs brand of nutraceuticals widely used in the gym industry.

Mr. Braun's success as a bodybuilder led him to become a successful coach and fitness consultant and personal trainer. He is known to mentor new aspirants in the bodybuilding field and promotes the safe and healthy pursuit of physical strengthen and conditioning. Because of his own struggles with drug abuse and the misuse of chemicals during his competitive bodybuilding career, Mr. Braun is diligent in focusing his mentees and clients on the healthy ways to improve physique and performance. Mr. Braun has used his own experiences to encourage others to engage in the hard work that is essential to wellness without reliance on the artificial chemicals that have a presence within the bodybuilding trade.

Mr. Braun's struggles with Chronic Epstein-Barr and iron deficiency anemia have taken a toll on him physically and mentally, yet he is dedicated to regaining his health and helping others along

the way. Dr. Brazelia Lazzari, his Functional and Integrative Medicine specialist, noted that PJ Braun "has a history of being very compliant with his therapies due to his passion and fever for his industry and is always striving to be the absolute best that he can be. I truly admire this young man for his tenacity to help not only himself but others. That is his priority in life, as he has expressed. The entire staff here at our medical office truly hold high regard and affection for Mr. Braun, as he is one of the most kindest and respectful patients we have."

As reflected in the compilation of reference letters incorporated into this memorandum, Mr. Braun has a positive impact on many people. For example, the letter from Dr. Christopher Zaino, D.C. underscores Mr. Braun's commitment to helping others in matters of nutrition and wellness. As Dr. Zaino explained, "PJ had also stepped in and helped me when my training and nutrition coach passed away in August 2021. PJ took me under his wing, guided, and offered amazing advice, at no charge, to reach a goal I was going for."

Christopher Graham, a retired police officer who suffers from severe anxiety disorder, met Mr. Braun at a fitness expo and the two bonded. Despite Mr. Braun's own personal struggles, he "made

himself available" for Mr. Graham and helped him through "emotional struggles." Mr. Graham considers Mr. Braun to be "the definition of selfless."

Michael Mase, based on the knowledge of his 30-year friendship with Mr. Braun, knows "that he is a very compassionate person" who "has always had a very strong work ethic." Mr. Braun "was always willing to give his time and money to better people's lives. A perfect example is a gentleman by the name of Jason Genova. Jason was an aspiring body builder with some mental handicaps that made it hard to fit in among the body building industry. Phillip took Jason under his wing for years providing him with free coaching and supplements along with including him in not only the Blackstone labs family but in his own family as well. This is just one of the many examples of what a caring and generous person he is."

To best friend Jason Castaldi, a financial planner, "PJ has always been a fair, honest, and generous person, which is why he was the Best Man at my wedding and the godfather to my firstborn daughter. PJ has always been always inexplicably himself and would never intentionally mislead or hurt anyone. In fact, he has always conducted himself in a manner that goes out of his way to help others

be the best they can be. Over the years PJ has been a pillar of strength and support when I needed him most."

Mr. Braun is also generous in helping others in need, and has a strong philanthropic ethic, as noted by Mr. Castaldi in explaining that Mr. Braun spearheaded an effort to raise money for the Leukemia Lymphoma Society, helping to raise over $500,000 toward cancer research in the memory of a close family friend who passed away from cancer. PJ "is just the type of person who will give you the shirt off his back. He is there when you need him and has shown me and my family nothing but kindness. He is a devoted friend, son, brother, uncle."

Jenn Aguirre knows Mr. Braun as "an incredible mentor and friend." "He gives so much for other people. He genuinely cares about helping people and that's very rare these days. I truly feel blessed to have him in my life."

Justin O'Donnell, a communications professional and fitness athlete, was guided by PJ Braun in the bodybuilding industry. Writes Mr. O'Donnell, "PJ believed in me as an amateur bodybuilder so much that he took me on as a sponsored athlete with his company. For an amateur to receive a sponsorship like that in this day-and-

age, it's a huge blessing. He generously gave of his time and money to assist me in my pursuit and continues to do so even to this day. For this, I am extremely grateful. This has included free supplements and clothing and assistance with contests, as well as marketing me and my personal brand as a semi-professional athlete."

As these people who know Mr. Braun well can attest, Mr. Braun is deeply remorseful for his criminal misconduct that does not define him. He is dedicated to helping others achieve and strive for the very best. Even as Mr. Braun has battled with life-impacting illnesses including depression and Chronic Epstein-Barr, he still goes out of his way to help others. A prison sentence will cause far more harm to Mr. Braun than most in view of his debilitating health. This Court should consider the impact of a prison sentence on his ability to survive the penal ordeal. He understands he is to be punished for his criminal activity, but the length of that punishment should be impacted by the obvious dangers to his health from a long period of confinement.

To avoid unwarranted sentencing disparity as outlined in § 3553(a)(6), this Court should consider the sentence to be imposed on his codefendant Mr. Singerman as well as the sentences imposed in

comparable cases throughout the country. As detailed in Mr. Singerman's Sentencing Memorandum (DE636), sentences for similar cases involving distribution of nutritional and dietary supplements have not approached the 63-78 month sentencing guidelines used as a starting point in this case. Sentences less than two years and most involving probation are the norm in punishing the offense behavior at issue in this case.

Likewise, the downward trend in the national average sentence for drug trafficking continues. U.S. Sentencing Commission's published data files from 2006 to 2018 confirm that the average sentence for a 2D1.1 guideline, Final Offense Level of 26, Criminal History Category of I was 41.1 months. To be sure, a 48-month sentence falls within the 47% percentile of the national cumulative sentence for Mr. Braun's category. Chart 1 illustrates the downward trend in sentencing:

***Chart 1: Average National Sentences***

**FILTERS: Lead Guideline=2D1.1 - Drug Trafficking, Final Offense Level=26, Crim. Hist. Category=I, n=3,368**




The trend chart above reflects the average sentences from fiscal years 2006 through and including 2018 for offenders sentenced under the indicated Guideline. The data are limited by the filters indicated and are derived from the U.S. Sentencing Commission's published datafiles.[3]

A sentence commensurate with the sentences of the other codefendants as well as within the national average is appropriate here in satisfaction of the relevant sentencing factors set out in 18 U.S.C. § 3553(a). Mr. Baun's offense conduct, his full acceptance of responsibility, his health situation, and his ability to direct himself to positive pursuits all join to justify a sentence below the guideline range that overrepresents the seriousness of his criminal behavior.

[3] The trend is not so obvious in the Southern District of Florida. Analyses of 129 sentences from 2006 – 2018 reveals an average sentence for a 2D1.1 guideline, Final Offense Level of 26, Criminal History Category of I of 60 months. In 2017, the average sentence was 49.1 months; and in 2018, the average sentence was 72.5 months.

Even a sentence at the low end of the guidelines range is unduly harsh, inconsistent with the goals of sentencing, and greater than necessary to punish Mr. Braun and serve as a deterrence to others. The imposition of a sentence consistent with similarly situated offenders who have accepted full and complete responsibility for their conduct is both fair and just. It does not in any way depreciate the seriousness of the offense conduct. An analogous sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing — just punishment, deterrence, protection of the public, and rehabilitation of the defendant. *See Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011) ("a sentencing judge's overarching duty under §3553(a) [is] to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in §3553(a)(2)").

Mr. Braun deeply acknowledges his offending conduct. He is remorseful. This case constitutes significant punishment, including a diminution of his standing in the community. He is directing his life to getting healthy and helping others during their own struggles. His loss of civil rights because of his guilty plea is perhaps his most devastating punishment, as he cannot now exercise the cherished

right to vote, the framework for his participation in the community.

Based on the facts and circumstances of Mr. Braun's individual case and considering the factors enumerated in 18 U.S.C. § 3553(a), a sentence no greater than the lower end of the guidelines range, and even significantly lower than that is substantively reasonable. The personal remarks of the friends and colleagues who have known and worked with Mr. Braun, presented in the letters submitted to the Court and the Probation Office, corroborate the reasonableness of the requested sentence, and are incorporated into this submission. The letters speak well of PJ as a caring, compassionate, and trustworthy man.

Respectfully submitted,

*s/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3105
Miami, FL 33131-2154
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com

## CERTIFICATE OF SERVICE

I CERTIFY on January 25, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

By: *s/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**

Jennifer Aguirre
10061 N. Cheyenne Dawn St
Las Vegas, NV 89183
12/4/21

Honorable District Judge William P. Dimitrouleas United States District Judge
U.S. Federal Building and Courthouse
299 East Broward Boulevard

Courtroom 205C, Chambers 205F Fort Lauderdale, Florida 33301

Re: United States v. Phillip (PJ) Braun
U.S.D.C. Case No. 19-Cr-80030-Dimitrouleas (S.D. Fla.)

Dear Judge Dimitrouleas:

I write this letter to you in consideration of PJ Braun's sentencing. I have known PJ for more than 5 years, as a friend, business associate, and companion. I feel that I can give this Court valuable information with respect to PJ's background, character, and reputation. I am aware of the unfortunate circumstances of the present legal difficulties. I urge this Court not to impose a sentence of jail time upon him. I truly do believe that PJ has learned from this whole experience over these past few years. My personal biggest concern is his health. He has medical

issues that need to be addressed and I don't know if he'll get the care he needs in jail

PJ has been an incredible mentor and friend. He gives so much for other people. He genuinely cares about helping people and that's very rare these days. I truly feel blessed to have him in my life. He's helped me in more ways that I could ever possibly explain. He's help me personally and he's helped me with my business. He's helped me with things just strictly to be a good person and a good friend with no benefit to him at all. This is just the kind of person that he is. He is one of the most passionate and honest and genuinely good hearted person I have ever met. As I previously mentioned he is gone above and beyond to be there for me in where is that most people wouldn't. He would get on the phone with me in the middle of some of his busiest times just a coach me through some thing whether it was business related or personal.

I would be happy to testify in person on PJ's behalf or provide the Court with any further information that might be helpful.

Sincerely,
Jenn Aguirre

CHARTER OAK FINANCIAL | redefine possible

**JASON CASTALDI**
FINANCIAL PLANNER

555 Heritage Rd. Suite 204
Southbury, CT 06488
O: (203) 262-1575 | C: (203) 313-2256 | F: (203) 262-1578
JCastaldi@CharterOakFinancial.com
www.CharterOakFinancial.com

4th December 2021

**The Honorable Judge William P. Dimitrouleas**

You Honor,

I am PJ Braun's best friend Jason Castaldi. I have known PJ for over 25 years. We grew up in each other's homes in the suburb of New Fairfield, CT. We played football together, under my fathers coaching, where we learned to be comrades, teammates and lifelong friends. I've spent many a night watching movies with PJ and his grandparents as he always had a special relationship with them. PJ has always been a fair, honest, and generous person, which is why he was the Best Man at my wedding and the godfather to my first-born daughter. PJ has always been always inexplicably himself and would never intentionally mislead or hurt anyone. In fact, he has always conducted himself in a manner that goes out of his way to help others be the best they can be.

Over the years PJ has been a pillar of strength and support when I needed him most. When I started my career in finance at the age of 22 PJ was the only person that truly went out of his way to help me and has always been one of my most valued centers of influence. When our best friend Jessie was in a car crash that left him with permanent brain damage, PJ sat with me day and night for months in a hospital room praying, crying and trying to bring laughter to the most depressing of situations. When I was in a dark place in my own personal life, PJ was the one person to remind me to get on my feet and hit the gym. He coached me back to a place of strength and stability and helped me refocus my purpose and deal with my stress. When my wife's best friend received a terminal cancer diagnosis, PJ pledged a generous donation out of his own pocket to help raise money for LLS (Leukemia Lymphoma Society). He also used his social media presence to further raise money and awareness. Our friend wound up passing away but to this day the group has raised over $500,000 towards cancer research in her memory. If I had to sum up PJ; he is just the type of person who will give you the shirt off his back. He is there when you need him and has shown me and my family nothing but kindness. He is a devoted friend, son, brother, uncle.

I know that PJ has made some mistakes and it is your responsibility to determine how he must be held accountable. It pains me to think PJ is going to lose years of his life for a mistake that has not hurt anyone or put anyone in harm's way. When I look at the world right now, there are criminals stealing, beating, even killing, and being set free the next day. I urge you to consider the type of person PJ Braun is and please be lenient. He is a bright light in a world that can be so dark.

Sincerely,

Jason Castaldi

Jason Castaldi is a registered representative of and offers securities, investment advisory and financial planning services through MML Investors Services LLC, Member SIPC. Supervisory office: 2321 Whitney Ave., Suite 402, Hamden, CT 06518. Tel (203) 288-5700

# INSTITUTE OF ADVANCED MEDICINE

HERBERT R. SLAVIN, M.D.
Medical Director

7200 W. Commercial Blvd, Ste 210 · Lauderhill FL 33319
O: 954.748.4991 · F: 954.748.5022 · www.drslavin.com

November 18, 2021

Re: Phillip Braun – DOB: 02/06/81

To Whom This May Concern:

Mr. Braun has been prescribed Lorazepam 2 Mg twice daily and should be maintained on this medication.

Sincerely,

Herbert R. Slavin, M.D.

Specializing In ...
Bio-Identical Hormone Replacement · Ondamed · Chelation Therapy · Certified Personal Trainer · Thyroid Therapy · DNA-Guided Therapy · HcG Weight Loss · IV Nutrient Therapy · Diapulse · Diabetic Therapy & Nutritional Counseling · Individual Lab Testing · Chiropractor · Physical Therapy · Aesthetic Medicine: Botox, Juvederm, Perlane, Restylane, Dysport, Exilis Skin Tightening, Chemical Peel, PRP Facial

Honorable District Judge William P. Dimitrouleas United States District Judge
U.S. Federal Building and Courthouse
299 East Broward Boulevard

Courtroom 205C, Chambers 205F Fort Lauderdale, Florida 33301

Re: United States v. Phillip (PJ) Braun
U.S.D.C. Case No. 19-Cr-80030-Dimitrouleas (S.D. Fla.)

Dear Judge Dimitrouleas:

I, Christopher Robert Graham, am a thirty-eight year old retired Police Officer from the Little Egg Harbor Police Department located in Ocean County, New Jersey. My Law Enforcement career expanded over the course of 15 years in which I achieved the rank of Sergeant, spent twelve years as a SWAT Team Operator and Sniper Team Leader, was named the 2009 Officer of the Year, and in 2017 received the NJ Silver Medal of Valor for a fatal officer involved shooting I was involved in. That traumatic incident in 2017 led to my diagnosis of Severe Anxiety, Depression, Post Traumatic Stress Disorder, and ultimately caused my untimely retirement.

Later that year, while attending a fitness expo, I had met, in person, Phillip (PJ) Braun. PJ and I quickly connected as friends due to having similar interests and hobbies. As PJ and I grew closer over time, I shared with him the emotional struggles I had been going through trying to find my new calling in life. PJ selflessly made himself available for me around the clock. He always remained positive and helped me mentally, physically, and financially, while I was struggling.

While it was apparent that PJ was going through his own mental and physical anguishes dealing with his trial, he never stopped putting others first and helping those around him. In my observations, he never stopped to make his own health priority over the needs of others. PJ is the definition of selfless.

I can only ask and hope that the court shows just some of the compassion towards PJ as he has shown to others, especially to myself. I owe my mental health, clarity, and positive outlook on life to Phillip Braun.

If requested by the court, I would happily testify on behalf of PJ, or provide this court with any additional information that the court would find helpful.

Respectfully,

Christopher R. Graham

Absolute Balance of Life Health & Wellness Center
101 Plaza Real South, Ste. G
Boca Raton, FL 33432
ofc: 561-353-2265 fax: 561-353-2267

December 7, 2021

**RE: PHILLIP BRAUN, DOB: 02/06/81**

To whom it may concern,

Please be advised that Mr. Braun is currently under our care for Functional and Integrative medicine. As per his labs, he has been treated for iron deficiency anemia as well as Epstein Barr Virus. He has received multiple rounds of intravenous iron as well as parenteral nutrition therapy. These therapies have been crucial for him to sustain his very demanding, very successful life in the health industry. Additionally, he has also been given functional medicine supplementation to sustain his well-being.

Mr. Braun has a history of being very compliant with his therapies due to his passion and fever for his industry and is always striving to be the absolute best that he can be. I truly admire this young man for his tenacity to help not only himself but others. That is his priority in life, as he has expressed. The entire staff here at our medical office truly hold high regard and affection for Mr. Braun, as he is one of the most kindest and respectful patients we have.

If you have any questions or need additional information, please do not hesitate to contact me.

Regards,

*Brazelia Lazzari, OMD*

Dr. Brazelia Lazzari
Functional and Integrative Medicine

Michael Mase

50 Town Farm Road

New Milford, CT 06776

December 7, 2021

Honorable District Judge William P. Dimitrouleas United States District Judge
U.S. Federal Building and Courthouse
299 East Broward Boulevard

Courtroom 205C, Chambers 205F Fort Lauderdale, Florida 33301

Re: United States v. Phillip (PJ) Braun
U.S.D.C. Case No. 19-Cr-80030-Dimitrouleas (S.D. Fla.)

Dear Judge Dimitrouleas:

I write this letter to you in consideration of Phillip Braun's sentencing. I have known Phillip for more than 30 years, as a friend, business associate and companion. Phillip and I were neighbors for a short time growing up and then reconnected as adults, I feel that I can give this court valuable information with respect to Phillips's background, character and reputation. I am aware of the unfortunate circumstances of the present legal difficulties. I urge this court not to impose a sentence of jail time upon him.

Knowing Phillip as I do, I know that he is a very compassionate person. I Knew Phillip when he was broke and driving $500 cars with holes in the floor. Phillip has always had a very strong work ethic. He was up at 5am training clients in the gym and then Bouncing at nightclubs till 2am to make ends meet and even then, he would give the shirt off his back to help someone less fortunate than him. He was always willing to help and stand up for the underdog. Once Phillip began to have more financial stability, he was always willing to give his time and money to better people's lives. A perfect example is a gentleman by the name of Jason Genova. Jason was an aspiring body builder with some mental handicaps that made it hard to fit in among the body building industry. Phillip took Jason under his wing for years providing him with free coaching and supplements along with including him in not only the Blackstone labs family but in his own family as well. This is just one of the many examples of what a caring and generous person he is.

I personally do not believe Phillip to be a misleading or deceitful person. In fact, my experience with him has always been as a truthful and transparent person. I have never heard or witnessed anything he has done to purposefully mislead anyone for any reason especially not for personal gain. Again I have only witnessed the opposite. Phillip has consistently been known to use his vast knowledge of training and supplements to guide less knowledgeable people to then become more educated. One example is his live Q and A that he was doing every morning for a while before his illness was affecting his daily life as dramatically as it has been. He provides his knowledge that he obtained over years and years and countless hours of training and studying physiology and how the human body reacts to nutrients and training styles to anyone who would like to watch completely free.

I understand some of the supplements Phillip was selling years ago were considered to be controversial, although I truly believe there was no malice intended. Since then I believe all the products he sells are backed by scientific studies and lots of time and effort are put into ensuring they are safe and effect for the general public. I feel that everyone makes mistakes and Phillip is certainly not a hardened criminal, although I don't believe Phillip would ever intentionally harm anyone ever, I understand the Judge needs to take all things into consideration and urge him to be as lenient as possible. I believe Phillip is much more valuable as an active member of society and truly hope he can remain so.

I would be happy to testify in person on Phillip's behalf or provide the court with any further information that might be helpful.

Sincerely, Michael Mase

ben.kuehne@kuehnelaw.com mdavis@kuehnelaw.com

TO: The Honorable Judge William P. Dimitrouleas

Hello,

My name is Justin O'Donnell, and I am furnishing this letter as a reference for PJ Braun.

About me: I am a communications professional, fitness athlete, and fiction writer who holds bachelor's degrees in both history and English. In 2017, I received my Master of Fine Arts in Professional and Creative Writing from Western Connecticut State University. Currently, I work as a Corporate Communications Manager for BlueCrest Inc. in Danbury, CT where I am responsible for corporate communications across 17 countries. Previously, I served as Internal Communications Manager for Terex Corporation in Westport, CT, where I was responsible for internal communications for 4,000 team members globally. Prior to that, I worked as a Marketing & Communications Manager for Preferred Utilities in Danbury, CT, and as a Communications Specialist for the Federal Aviation Administration in Washington, D.C. I currently live in Brookfield, CT with my wife, daughter, and Siberian Husky.

I have known PJ for 9 years. I met PJ at the New York Sports Club in Danbury, CT in the context of working out near each other every day. He gave me endless advice on fitness and nutrition, for free. I did not spend much time with him beyond that, however, because he moved away to Florida shortly after this time. That said, I followed him on social media for years, and developed a friendship with him this way.

Based on my acquaintance, I believe PJ is a fair and honest man. I know he loves me, and I couldn't imagine him going out of his way to hurt anyone or anything. One needs to only look at the adoration with which he treats his pets to know this, as well as his athletes. He takes very good care of people, and is constantly giving of his time, love, and money to others. If you asked him for his shirt off his back, he would give it to you—no questions asked.

PJ believed in me as an amateur bodybuilder *so much* that he took me on as a sponsored athlete with his company. For an amateur to receive a sponsorship like that in this day-and-age, it's a huge blessing. He generously gave of his time and money to assist me in my pursuit and continues to do so even to this day. For this, I am extremely grateful. This has included free supplements and clothing and assistance with contests, as well as marketing me and my personal brand as a semi-professional athlete.

People make mistakes. We get caught up in the wrong things. Life has a way of exacting a cost, and in my honest opinion, PJ has paid a dear cost with the stress of his health over the past few years. It truly broke my heart watching him battle with depression, anxiety, and mercurial diseases. I worry about him.

That said, I have watched him become a changed man—for the better. He is full of love, and he wants to see others do well. It's so rare in our society to see that. I urge the judge to please be lenient in this regard.

I am generally aware of the case being brought against PJ, as well as the circumstances that have given rise to his conviction. I have maintained a positive influence on him, assisting him however I can. I believe there were many people over the years who tried to take advantage of his kindness, and naivety, and I do believe that when this is all said and done, he will be a better man. I am proud of how he has handled the case, and I am happy to call him my friend. Whatever happens, I know that PJ is at peace in his heart, and he is eager to have this all behind him. We all are.

Sincerely,

Justin Y. O'Donnell
55 N Mountain Rd
Brookfield CT
06804
justinyodonnell@gmail.com

December 3, 2021

Dr Chris Zaino

3000 Research Forest Suite 150

The Woodlands, Texas 77381

Honorable District Judge William P. Dimitrouleas United States District Judge
U.S. Federal Building and Courthouse
299 East Broward Boulevard

Courtroom 205C, Chambers 205F Fort Lauderdale, Florida 33301

Re: United States v. Phillip (PJ) Braun
U.S.D.C. Case No. 19-Cr-80030-Dimitrouleas (S.D. Fla.)

Dear Judge Dimitrouleas:

My Name is Dr Christopher Zaino D.C. I am 45 years old, I practice in The Woodlands, Texas for 17 years. In addition to a wellness professional, I am a father of 2 boys, help run a no option medical tourism clinic in Cancun to help those with no other options to deal with their diseases. I am speaker and health advocate all over the world, to help people live to their full potential through optimizing the function and health of their bodies.

I write this letter to you in consideration of PJ Braun's sentencing. I have known PJ through on-line and all his education on Social media and YouTube. Our first true contact was November 2020. I feel that I can give this Court valuable information with respect to Pj's background, character, and reputation. I am aware of the unfortunate circumstances of the present legal difficulties. I urge this Court not to impose a sentence of jail time upon him.

Knowing PJ Braun as I do, he has been valuable and of meaningful assistance to the community and myself. I have known PJ, by helping work with many of the health issues he is going through, that no one knows about. I have worked with him to add value and content to his business, that has helped me so much personally, therefore I donated my time to be an advocate. PJ had also stepped in and helped me when my training and nutrition coach passed away in August 2021. PJ took me under his wing, guided, and offered amazing advice, at no charge, to reach a goal I was going for. He is attempting in every way to repay his debt to society. I believe that the stigma he has sustained from his arrest has been a tremendous punishment for him and significant punishment is unnecessary. Society will be served best by having him perform public service for the community. He is not a hardened criminal. With the compassion of the Court, he is a credit to the community.

I would be happy to testify in person on Pj Braun's behalf or provide the Court with any further information that might be helpful.

Sincerely,

(Dr Chris Zaino D.C.)